09 CIV 7985

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ATIRI, MAHUBE MOHAMED

                              Petitioner,

             v.

ERIC HOLDER, Attorney General; JANET
NAPOLITANO, Secretary of the Department of
Homeland Security; ALEJANDRO MAYORKAS,
Director of United States Citizenship and Immigration
Services; ANDREA J. QUARANTILLO, New York
District Director, United States Citizenship and
Immigration Services

                              Respondents.
------------------------------------------------------------X

File No.:

Alien no. 031 069 878

**PETITION FOR HEARING ON NATURALIZATION APPLICATION**

      Petitioner, MAHUBE MOHAMED ATIRI, by and through his undersigned attorneys, commences this action against the above-named Respondents, and states as follows:

### NATURE OF ACTION

      1.    This is an action for <u>de novo</u> review under Section 310(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1421(c) and declaratory relief pursuant to 28 U.S.C. § 2201, as well as attorneys' fees and costs pursuant to 28 U.S.C. § 2412.

      2.    The claims for <u>de novo</u> review invoke, <u>inter alia</u>, the jurisdiction of the United States District Court to consider naturalization eligibility <u>de novo</u> and to grant naturalization that was wrongfully withheld by the Respondents.

1

3. The claims for declaratory relief seek, inter alia, a judicial declaration that United States Citizenship and Immigration Services ("USCIS") improperly and unlawfully denied Petitioner's application for naturalization.

4. The claim for attorneys' fees and costs seeks an assessment of the same against the Respondents pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

## JURISDICTION AND VENUE

5. The Court's jurisdiction over the subject matter of this case is explicitly provided for in 8 U.S.C. § 1421(c), which states in pertinent part:

> [a] person whose application for naturalization ... is denied ... may seek review of such a denial before the United States district court. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(3) based on the fact that Petitioner is a resident of the Bronx, New York, within the jurisdiction of the United States District Court for the Southern District of New York.

7. In connection with the claim for attorneys' fees and costs, under the Equal Access to Justice Act, 28 U.S.C. § 2412, Petitioner seeks to recover costs and attorneys' fees incurred in bringing this action. Petitioner has retained the law firm of Jones Casado, LLP to represent him in this action. Petitioner is obligated to pay reasonable attorneys' fees and costs incurred in the prosecution of this cause.

8. All conditions precedent to bringing this lawsuit have been satisfied, in that all administrative appeals and avenues of relief have been exhausted.

## THE PARTIES

9. Petitioner, Mahube Mohamed Atiri, is a native of Yemen and has been a lawful permanent resident of the United States since 1980. He resides at 126-128 East Burnside Avenue, Bronx, New York 10453.

10. Respondent Eric Holder is the Attorney General of the United States and as such is the head of the United States Department of Justice and the Chief Law Enforcement Officer of the United States. The Attorney General has the power to naturalize persons as citizens of the United States. 8 U.S.C. § 1421(a). This action is brought against the Attorney General in his official capacity.

11. Respondent, Janet Napolitano, is the Secretary of the Department of Homeland Security ("DHS"). She is generally charged with enforcement of the Immigration and Nationality Act and is further authorized to delegate such powers and authority to subordinate employees of the DHS. This action is brought against the Secretary in her official capacity.

12. Defendant Alejandro Mayorkas is the Director of USCIS, an agency within the DHS to whom the Secretary's authority has in part been delegated and is subject to the Secretary's supervision. He is generally charged with the overall administration of the benefits and immigration services. See 8 C.F.R. § 100.2(a). This action is brought against the Director in his official capacity.

13. Defendant Andrea J. Quarantillo is the District Director of the New York District of USCIS. In this capacity she is the USCIS official generally charged with supervisory authority over the operations of the USCIS within the New York District

with certain specific exceptions not relevant here. 8 C.F.R. § 100(d)(2)(ii). This action is brought against the District Director in her official capacity.

## FACTUAL ALLEGATIONS

14. This action arises from an improper and unlawful denial of naturalization to Petitioner.

15. Petitioner was granted lawful permanent residence in the United States on August 7, 1979 under file number A 031 069 878.

16. On July 23, 2007 Petitioner filed an application for naturalization with the USCIS. By this application he sought to become a naturalized citizen of the United States pursuant to the provisions of INA § 316, 8 U.S.C. § 1427.

17. In connection with that application, a district adjudications officer ("D.A.O.") at the New York District Office of the USCIS (Sisodia, D.A.O.) conducted an examination of Petitioner on April 3, 2008. At the conclusion of the examination, the D.A.O. requested additional evidence from Petitioner. Petitioner submitted the requested evidence in a timely fashion. The New York District Office conducted a second examination of Petitioner on May 16, 2008. By way of a decision dated September 17, 2008, USCIS denied Petitioner's application.

18. On October 6, 2008 Petitioner submitted a timely Request for Hearing on a Decision in Naturalization Proceedings under Section 336 of the Immigration and Nationality Act. The New York District Office conducted a hearing in connection with this request on April 14, 2009 (Cooney, D.A.O.). By way of a decision dated May 21, 2009, Respondent Andrea J. Quarantillo issued a decision denying Petitioner's

application on the grounds that he lacked good moral character because he previously had two overlapping marriages in his native Yemen.

19. At the time of the filing of the application, and at all times since, Petitioner has been fully eligible for naturalization. Petitioner satisfied all of the naturalization requirements including: being admitted to the United States as a lawful permanent resident (INA § 318, 8 U.S.C. § 1429); residing continuously for five years subsequent to lawful permanent resident status and prior to filing a petition for naturalization (INA § 316(a), 8 U.S.C. § 1427(a)(1)); being physically present in the United States for half of the statutory period (INA § 316(a), 8 U.S.C. § 1427(a)); being a person of good moral character; (INA § 316(a)(3), 8 U.S.C. § 1427(a)(3)); demonstrating favorable disposition and attachment to the Constitution and form of Government of the United States (INA § 316(a)(3), 8 U.S.C. § 1427(a)(3)); having knowledge of the English language (INA § 312(a)(1), 8 U.S.C. § 1423(a)(1)); and having knowledge of the fundamentals of American history and government (INA § 312(a), 8 U.S.C. §1423(a)).

20. The May 21, 2009 decision to deny Petitioner's application, as well as the prior decision dated September 17, 2008, erroneously and improperly concluded that Petitioner is precluded from establishing good moral character because of his supposed polygamy in his native Yemen. 8 C.F.R. § 316.10(b)(2)(ix) (precluding a finding of good moral character where an alien "[h]as practiced or is practicing polygamy.")

21. The constitution of Yemen declares that Islam is the state religion and that Shari'a is the source of all legislation. U.S. Dep't of State, Bureau of Democracy, Human Rights and Labor, "2008 Human Rights Report: Yemen" (February 25, 2009), http://www.state.gov/g/drl/rls/hrrpt/2008/nea/119130.htm. Under Yemeni law and

custom a man is permitted to have up to four wives. Id. A husband may divorce a wife without justifying the action in court. Id.

22. On October 12, 1980 Petitioner married Fawzia Alhubaishi in Yemen. The marriage was arranged by his father according to Yemeni custom. Petitioner described this marriage as "loveless."

23. On September 13, 1990 Petitioner entered into a marriage with Ghania Alsaidi. This marriage was also entered into in Yemen. Petitioner described this marriage as one entered into out of love.

24. On November 15, 2004 Petitioner obtained a civil divorce from Ms. Alhubaishi in Yemen under Yemeni law. Under Yemeni law he was not required to do so in order to obtain a divorce.

25. On January 3, 2007 Petitioner entered into a civil marriage with Ms. Alsaidi. He remains in a marital relationship with her today.

26. In marrying both Ms. Alhubaishi and Ms. Alsaidi, Petitioner did not violate any laws of Yemen. In fact, the U.S. government acknowledges that such marital arrangements are legal in Yemen: "In cases of legal marriage to two or more spouses at the same time, or marriages overlapping for a period of time, you can file only for your first spouse." (See U.S. Dep't of State, Embassy of the United States, Sana'a, Yemen, Immigrant Visas, located at http://yemen.usembassy.gov/yemen/foreign_spouse.html (current as of September 15, 2009)).

27. The Board of Immigration Appeals ("BIA") has long held that where the practice of marriage to more than one spouse is lawful in a country, the children of such marriages are considered legitimate for U.S. immigration law purposes. See e.g. Matter

of Mahal, 12 I. & N. Dec. 409, 1967 WL 14045 (B.I.A. 1967) (children of second marriage of father entitled to immigrant visa classification upon the filing of a visa petition by their United States citizen half-brother where polygynous marriage of the father was legal under Indian and Pakistani law then prevalent.)

28. For U.S. immigration law purposes, polygamy is "the historical custom or religious practice of having plural spouses." See Section 40.101 Note 1 of Part 9 of the Foreign Affairs Manual ("FAM"). In order to sustain a charge that an alien is a polygamist, it must be shown that he "subscribes to the historical custom or religious practice called 'polygamy'" Matter of G--, 6 I & N Dec. 9 (BIA 1953). It is not sufficient that an alien have had more than one spouse at a given time by virtue of a second marriage undertaken without benefit of divorce. Id. "In immigration law, the terms 'bigamy' and 'polygamy' are neither synonymous nor interchangeable." Id.

29. Under the Immigration and Nationality Act, "[a]ny immigrant who is coming to the United States to practice polygamy is inadmissible." INA § 212(a)(10)(A), 8 U.S.C. § 1181(a)(10)(A). This is a narrow ground of inadmissibility, applicable only those aliens coming to the U.S. with the specific purpose of engaging in polygamy; those advocating polygamy or even those who have practiced polygamy abroad do not fall within this ground of inadmissibility. Compare INA § 212(a)(10)(A), 8 U.S.C. § 1182(a)(10)(A) with INA § 212(a)(11), 8 U.S.C. § 1182(a)(11) as originally enacted by Act of June 27, 1952; See also D. Levy, "Exclusion Grounds Under the Immigration Act of 1990: Parts 1 & II," 91-8 & 91-9 Immigration Briefings (August & September 1991).

30. In any event, far from subscribing to the practice of polygamy, Petitioner took the step of obtaining a Yemeni civil divorce to end his arranged marriage with Ms.

Alhubaishi and then married Ms. Alsaidi in a Yemeni civil ceremony. These are hardly the actions of an avowed polygamist.

31.  In light of the recognition by the U.S. Department of State that marriages to more than one person or overlapping marriages are in some cases legal, BIA decisions holdings that offspring of legal polygamous marriages may be legitimate for immigration purposes, BIA precedent requiring that an alien must subscribe to the historical custom or religious practice of polygamy in order to be rendered inadmissible on polygamy grounds, and Congress' softening of the ground of inadmissibility for polygamy, Respondents' conclusion that Petitioner's overlapping marriages per se render him a person lacking good moral character is unsupportable. Consequently, the denial of Petitioner's naturalization application was erroneous and improper.

31.  Respondents' failure to duly consider the proper legal standard was unlawful and a violation of their duties to perform fair and proper administrative naturalization. Petitioner was and is fully eligible for naturalization. Petitioner is not barred from naturalization merely because he had two overlapping marriages. One of the marriages was arranged for him by his family. Both marriages were legal under Yemeni law. Most tellingly, neither marriage stemmed from a subscription on Petitioner's part to the historical custom or religious practice of polygamy. The District Director's position that Petitioner is barred from naturalization is based on an erroneous understanding of the facts of the case and the applicable law. Thus, the District Director of USCIS improperly and wrongfully denied Petitioner's naturalization application. Petitioner, therefore, respectfully invokes the de novo jurisdiction of this Court.

REQUEST FOR RELIEF

WHEREFORE, Petitioner requests that the Court enter a judgment in favor of Petitioner and against Respondents, by (i) reviewing the Petitioner's eligibility for naturalization <u>de</u> <u>novo</u> and granting Petitioner's naturalization application; (ii) declaring that the Respondents' actions are an arbitrary and capricious abuse of discretion, and compelling the Respondents and those acting under them to perform their duty to act upon and approve Petitioner's application for naturalization; (iii) by entering judgment awarding Petitioner his reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, and awarding all other such relief to Petitioner as this Court deems just, proper and equitable.

Dated: September 17, 2009

Respectfully submitted,

_____
Kevin W. Jones
KJ6112
Jones, Casado LLP
Attorneys for Petitioner
225 Broadway, Ste. 2700
New York, New York 10007
Telephone:   (212) 334-4577
Facsimile:    (212) 406-6890